## APPEAL OF J. W. HOLLENBACK ET AL.

## [J. T. DOYLE v. J. W. HOLLENBACK ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LUZERNE COUNTY, IN EQUITY.

Argued April 12, 1888—Decided October 1, 1888.

1. A deed may not be reformed unless there is in the bill an averment of fraud, accident or mistake in the making of it, or of the facts from which the fraud, accident or mistake would necessarily be implied.

2. Even with such averments properly pleaded, when the answer is responsive, it must stand until overcome by the testimony of two witnesses, or that of one witness and circumstances which are equivalent to the testimony of another.

3. Where a bill to reform a deed was dismissed on demurrer because of the absence of sufficient averments of fraud, accident or mistake, or of facts from which the same was to be necessarily inferred, the dismissal is not a bar to relief upon a subsequent bill, though the first bill may be considered as showing an antagonistic position set up as the then ground of relief.

4. Where a deed was made in pursuance of a prior executory agreement, and was submitted to counsel of the grantee for examination, prior to its acceptance, it must be presumed that the agreement was merged in the deed, and, after the death of the grantor and of the counsel, the deed will not be reformed in the absence of the clearest and most satisfactory evidence of fraud, accident or mistake.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 215 January Term 1888, Sup. Ct.; court below, No. 3 January Term 1885, C. P. in Equity.

In the latter part of 1884, a bill in equity was filed by John T. Doyle against John Welles Hollenback and Edwin S. Osborne, which set forth in substance :

· That the plaintiff was the surviving husband of Catherine E. Doyle, formerly Hollenback, who died without issue on February 14, 1881, leaving a will, duly admitted to probate, wherein her estate was passed to the plaintiff; that the testatrix was a daughter of John Matthias Hollenback, deceased, and that she

left surviving her Emily A. Hollenback, a sister of the whole blood, who has since intermarried with the plaintiff.

That in the year 1872, John M. Hollenback, claiming to be the owner thereof in fee simple, brought an action of ejectment against John W. Hollenback, and other defendants claiming under him, to recover certain lands in the third division of certified Wilkes-Barre township, and when the cause was called for trial on May 16, 1873, a compromise agreement was executed, set out at length, of which the material parts were as follows :

1. That the said plaintiff, John M. Hollenback with his wife joining therein, shall well and sufficiently release and convey unto the said defendant, John Welles Hollenback, all his, the said plaintiff's right, title and interest in and to all and singular the above stated lands, including therein all interest and estate which may have passed to S. P. Longstreet by virtue of the sale on the John Behee judgment, so that the said defendant, John Welles Hollenback, shall become well seized of an estate in fee simple in the said lands and every of them.

2. That the said John Welles Hollenback shall assign, transfer and convey unto Edwin S. Osborne, trustee, in fee simple and for the uses and purposes hereinafter limited and appointed, all those the two equal undivided fifths parts of all and in all those parts and portions of the lots Nos. 16, 17 and 18 in the third division of the said certified township of Wilkes-Barre, lying eastwardly of the road in Plains township known as and called the Miner road, so far as the said lands now are, or will be under the provisions of this instrument held or owned by said John Welles Hollenback, and to be more fully described in the said deed to be by him executed: To have and to hold the same unto the said Edwin S. Osborne, trustee, and his successors and assigns, in trust as to the one equal third part of the said two fifths parts for the use of Emily A. and Catharine E., minor children of the said John M. Hollenback, the said trustee to pay over the said one third part of the said two fifths parts of the net annual income and rents arising from said lands, to the guardian of the said minors, during their minority, and to them in person, when and after they attain their majorities ; and in trust, as to the remaining two thirds parts of said two fifths parts, to pay over the net annual income, rents and

profits arising therefrom to the said John M. Hollenback, for the support and maintenance of himself and family.

By other sections of this agreement it was provided that as said lands were under lease for coal mining purposes to the Del. & H. Canal Co., and the Balt. Coal & Union R. Co., John W. Hollenback was authorized to collect the rentals and should account for and pay over two equal fifths parts of the sum to said trustee, and further might sell and convey surface lots, accounting for and paying over two fifths of the proceeds thereof, less taxes, costs, necessary expenditures, etc., paying over said rentals and proceeds for the uses and purposes hereinbefore set forth.

It was further averred, that afterwards, and in pursuance of the covenants to be performed by him under said agreement, John M. Hollenback procured the deed of S. P. Longstreet and wife, for their interest, and still later, together with his wife, conveyed to said John W. Hollenback, so that the latter became well seized of an estate in fee simple in the lands in dispute in said action, as provided in said agreement of compromise.

That after the execution of the two deeds last mentioned, the said John W. Hollenback executed a deed of special warranty, purporting to be in compliance with his covenants in said agreement, and reciting that the same was made subject to the conditions and limitations and in pursuance of the requirements of said agreement, and conveying the two equal undivided fifths parts of the lands described in the said agreement, unto the said "Edwin S. Osborne, his successors and assigns, . . . . . to have and to hold unto the said Edwin S. Osborne, his successors and assigns," in trust as stated in said agreement; omitting, however, from the premises of said deed, the term "unto Edwin S. Osborne, trustee, in fee simple," and also, omitting from the habendum thereof, the term "unto the said Edwin S. Osborne, trustee, his successors and assigns," contrary to the provisions of the said compromise agreement.

This deed, as appeared at the hearing, was dated August 30, 1873, was between John W. Hollenback, of Wilkes-Barre, of the one part, and "Edwin S. Osborne, of the same place, of the other part," and in consideration of one dollar paid by said Edwin S. Osborne, "for the uses and upon the trusts hereinafter mentioned," conveyed "unto the said Edwin S. Osborne, his

successors and assigns, the two equal undivided fifths parts of "
the lands described therein, subject to the leasehold interest of
the Del. & H. Canal Co. and the Balt. Coal & Union R. Co.,
with the· habendum as stated, and with a covenant of special
warranty "forever."

It was further averred in the bill that from the time of the
execution of the last mentioned deed until the death of said
Catherine E. Doyle, John W. Hollenback continued to receive
and receipt for the coal rentals accruing from the lands con-
veyed, and to pay over, as he alleged, the two fifths of the
same to said Edwin S. Osborne, for the uses and purposes
stated in said agreement, and said Edwin S. Osborne accounted
therefor, the two thirds thereof to John M. Hollenback, one
sixth thereof to Emily A. Hollenback, and the remaining one
sixth to Catherine E. Doyle ; and that after the death of said
Catherine E. Doyle, said rentals were received and paid over
in the same way, save that two fifths of the same, less one sixth
of said two fifths, were paid over to said Edwin S. Osborne,
who accounted therefor, the two thirds of said two fifths to
John M. Hollenback, and the one sixth of said two fifths to
said Emily A. Hollenback.

That on November 25, 1882, in consequence of a judicial
sale of the estate and title of John M. Hollenback, his interest
in said lands under said agreement of compromise and convey-
ance became vested in John W. Hollenback, who since then
had continued to receive the said rentals and pay over, as he
alleged, the one sixth of the two fifths thereof to said Edwin S.
Osborne, trustee, who accounted therefor to Emily A. Hollen-
back, now Emily A. Doyle, wife of plaintiff; and that prior
and since the death of Catherine E. Doyle, the said John W.
Hollenback had sold town lots from the surface of said lands,
but since her death, he had refused to account for and pay
over to the said trustee, for the plaintiff, or to the latter in
person, any coal rentals subsequently accruing or any proceeds
of surface lots sold by him, for the reason, as alleged by him,
that she as cestui que trust owned only a life estate therein.

The bill closed with the following averment :

19. That under the terms of the written agreement, marked
Exhibit A., and the subsequent deeds from S. P. Longstreet
and wife, and John Matthias Hollenback and wife, to the said

John Welles Hollenback, as charged in the 7th paragraph, the said Catherine E. Hollenback and Emily A. Hollenback each became well seized in equity in fee simple, not only as she supposed but in fact, of an undivided one sixth of two equal fifths parts of the lands described in said agreement as parts of lots 16, 17 and 18, subject only to the right of the said Edwin S. Osborne, trustee, during their respective lives, to receive and pay over to them their proportion of the coal rentals and proceeds of sales of town lots arising from said lands, and each also became entitled, as she supposed and was in fact, to a conveyance from the said John Welles Hollenback to the said Edwin S. Osborne, trustee, in fee simple for the uses and purposes last aforesaid; and that as to the said Catherine E. Hollenback, the omission by the said John Welles Hollenback in the deed from him to the said Edwin S. Osborne of the terms stated in the 8th paragraph of this bill, as well as any claim of the said John Welles Hollenback that she was not entitled to an estate in fee simple as aforesaid, was wholly unwarranted and without her authority or knowledge either then or subsequently thereto, or the authority of any other person acting or presuming to act in her behalf, and such omissions by the said John Welles Hollenback, as also his subsequent repudiation of her fee simple title, coupled with his previous conduct and acts in recognition thereof, were wrong, unconscionable, and in fraud of her rights and the rights of your orator, her devisee.

The prayers were, in substance:

1. That John W. Hollenback be directed to reform his said deed by omitting from the premises thereof the words, "unto the said Edwin S. Osborne, his successors and assigns," and inserting in their stead the words, "unto the said Edwin S. Osborne, trustee, in fee simple, his successors and assigns;" and by omitting from the habendum thereof the words "unto the said Edwin S. Osborne, his successors and assigns," and inserting in their stead the words, "unto the said Edwin S. Osborne, trustee in fee simple, his successors and assigns."

2. That the trustee be decreed to convey Catherine's share to the plaintiff.

3. For an account.

The material part of the separate answer of John W. Hollenback was as follows:

6. I deny the averments of the eighth section of the said bill in relation to the character of the deed executed by me in pursuance of the agreement of May 16, 1873, and the manner and date of the execution thereof. At the time of the execution of the agreement of May 16, 1873, I understood that I was giving only an equitable life estate in the said two fifths to the said John Matthias Hollenback, two thirds of which were to be paid over, by the trustee named, to him, the said John Matthias Hollenback, for the support and maintenance of himself and family, and the one third to his two daughters, Emily A., and Catherine E., (his only surviving children by his first wife,) that is, one sixth to each of their guardians during their respective minorities, and to them in person when and after they attained their respective majorities.

When the conveyance, in execution on my part of that agreement came to be prepared, it was drawn so as to convey such life estate only. Insisting that this was the intention as well as the legal construction of the said agreement of May 16, 1873, and refusing to convey an estate in fee simple, I executed and delivered the deed mentioned in said section on August 30, 1873, to the said John Matthias Hollenback, who retained the same for a long period of time, (and as I am advised, submitted it to his counsel for their opinion,) and with full knowledge of the legal effect of said deed, accepted the said deed and executed and delivered to me his deed of release, dated and acknowledged October 24, 1873, and subsequently, to wit, on December 17, 1873, caused all the said instruments to be recorded.

And in further answer I say that the said plaintiff, by bill in equity brought in this court in the name of Edwin S. Osborne, trustee as aforesaid, to No. 2 May Term, 1882, under his oath, charged and admitted that I had refused to convey the said two equal undivided fifths parts to the said trustee in fee simple, and claiming and alleging that by the terms of the said agreement of May 10, 1873, I was only bound to convey a life estate, executed and delivered the said deed of August 30, 1873, thus limiting the estate of the said trustee to a life estate.

And I am advised that the said deed of August 30, 1873, fully and entirely carries out the provisions and undertakings contained in the said agreement of May 16, 1873, and that the

said agreement stipulates and provides for an equitable life estate and nothing more to the said Catherine E. and Emily A., and that, even if this were otherwise, the said agreement was merged in the said deed of August 30, 1873, and the said deed must both at law and in equity be considered as conclusive evidence of the real intention of the parties as to the final consummation of the transaction.

The material part of the answer of Edwin S. Osborne was as follows :

8. After the execution of the agreement of May 16, 1873, John Welles Hollenback prepared, or had prepared by his counsel, the deed dated and executed August 30, 1873, and submitted the same to John Matthias Hollenback about that time. Some objection was made to this deed. Counsel were consulted and the matter examined and discussed. During this time the deed which Longstreet had executed and acknowledged in May and the deed which John Matthias Hollenback had executed and acknowledged in October (being the two deeds mentioned in paragraph seven of said bill), were retained by the said John Matthias Hollenback from the time of their respective dates and after the delivery of said deed of August 30, 1873, from the said John Welles Hollenback to the said John Matthias Hollenback, until about December 16, 1873, when the said last mentioned deed was finally accepted by the said John Matthias Hollenback, acknowledged by the said John Welles Hollenback, and thereupon to wit: December 17, 1873, all of the said deeds were recorded.

Reference is made in the paragraph, quoted from the answer of John W. Hollenback, to a bill filed to No. 2 May Term 1882, between E. S. Osborne, trustee, and John T. Doyle, devisee of Catherine E. Doyle, plaintiffs, and John W. Hollenback, defendant. In this bill it was averred :

6. That John Welles Hollenback, notwithstanding the title to the said lots of land had been fully vested in him by the conveyances mentioned in the foregoing fourth and fifth paragraphs of this bill, in accordance with the said agreement of May 16, 1873, refused to convey to your orator, in fee simple, and for the uses and purposes in the said agreement limited and appointed, all those the two equal undivided fifths parts of

the said lots of land, but, claiming and alleging that, by the terms of said agreement, he was only bound to convey to your orator, for his, your orator's cestuis que trustent, a life estate in the said lots of land, executed and delivered to your orator a deed bearing date August 30, 1873, and recorded in the proper office in Luzerne county, in Deed Book No. 173, page 41, etc., in which, instead of using, in connection with the grant, the words, "unto Edwin S. Osborne, trustee, in fee simple," as contained in the said agreement of May 16, 1873, which imply and were intended to imply, a conveyance of an absolute estate of inheritance, he used the words, "unto the said Edwin S. Osborne, his successors and assigns," thus limiting the quantity of estate conveyed to your orator for his cestuis que trustent, to a life estate in the said two fifths parts of the said lots of land, and retaining in himself the "fee simple" thereto.

This first bill, which prayed for a reformation of the deed of August 30, 1873, "so that the said deed shall conform to said agreement of May 16, 1873, and shall give effect to the intention of the parties," was demurred to and on September 5, 1882, was dismissed, on the ground " that it is not averred in the bill that there was accident, mistake or fraud in the execution of the deed, or in its acceptance by the plaintiff." Leave was given to amend the bill, but no amendment was filed, and on March 3, 1884, a petition was filed praying leave to dismiss the bill and discontinue the proceedings "without prejudice," which was denied, in so far as that the dismissal should be "without prejudice."

Issue having been joined in the cause now reviewed, *Mr. E. V. Jackson* was appointed examiner and master. At the hearing, testimony was taken which fully appears in the Opinion of Court below. The other testimony is immaterial as the case was decided.

Upon the facts found, the master determined:

1. That the contract of compromise of March 16, 1873, clearly gave an estate in fee as to the one sixth of the two fifths of the lands therein described to Edwin S. Osborne, trustee, for the use of Catherine E. Doyle in fee.

2. That Catherine E. Doyle, and therefore the plaintiff, was

entitled to the specific performance of this contract by the defendant, John W. Hollenback, which in this case should be effected by the reformation of the deed of August 30, 1873, according to the prayer of the bill.

3. That the decree upon the demurrer to the bill filed to No. 2 May Term 1882, was not a dismissal of the bill on its merits, and therefore could not be pleaded in bar of the plaintiff's relief as res judicata.

A formal decree was recommended.

The defendants then filed with the master a large number of exceptions, one of which was that he had erred in finding, as matter of fact, that there was evidence that the deed of August 30, 1873, as framed, was the result of mutual mistake of the parties thereto; another, that he had erred in overruling the demurrer as contained in the answer of J. W. Hollenback; and another, that he had erred in finding as matter of law, that the plaintiff had established his right to the reformation of the deed, as prayed for in his bill.

These exceptions, being overruled by the master, were renewed upon the filing of the report, and on April 2, 1887, after argument, were disposed of in the following opinion, RICE, P. J. :

In disposing of the exceptions to this report we have been compelled to abandon any attempt to consider them singly. As shown by the arguments of counsel, as well as the report of the master, the first question suggested is as to the construction of the agreement of May 16, 1873 ; and after a full and careful consideration of this question, leaving out of view the subsequent acts of the parties, we think the contract, on its face and taken as a whole, clearly manifests an intention to pass a fee, not only to the trustee but also to the beneficiaries therein named. That a fee was to pass to the trustee is expressly declared in the instrument, and while this is not conclusive, it is not unimportant in determining the intention of the parties as to the quantum of estate to be secured to the cestuis que trustent. When it is considered further that the contract was executory, that it was supported by a valuable and highly meritorious consideration, that it made no provision for the accumulation and investment of the coal rents and purchase money of lots, but

clearly contemplated the payment of the same in bulk to the beneficiaries ; that, while careful to stipulate, first, for the vesting of a fee in the defendant, and second, for the conveyance of a fee to the trustee, no words as " during life " are used in connection with the limitation to the cestuis que trustent, we think it is not to be presumed from the absence of words of inheritance that they were to take only life estates, and that the provision for the conveyance of a fee was inserted inadvertently, but, on the contrary, if the case rested here, it would come fairly within the rule that in executory contracts words of inheritance will be supplied where the consideration paid or other circumstances evince that no less than a fee was intended. This conclusion is so well sustained, and the arguments against it so satisfactorily answered, by the reasoning of the master and the authorities cited by him, as to render unnecessary a greater elaboration by us of the considerations above suggested. We, therefore, pass to the second question.

The deed from J. W. Hollenback, while purporting on its face to be in pursuance of the contract and subject to its limitations and conditions, does not contain technical terms importing a fee, whereas, as we have seen, he had agreed to convey such an estate. If this were all, the simplest case for the exercise of the power of this court to reform written instruments would be presented. The mistake would be apparent on the face of the instrument, and there would be no room for presuming from the trustee's acceptance of the deed that a new intent, different from that manifested by the executory agreement, had supervened ; for, to say nothing of the rebuttal of such presumption by the recitals of the deed, the trustee had no authority to vary the agreement by the acceptance of a deed for a less estate than that called for by the agreement. This naturally leads up to an inquiry as to the action of J. M. Hollenback, in connection with the execution and delivery of the deed in question, and his knowledge of its contents and legal effect at that time. It appears from the testimony of General Osborne that the deeds from J. M. Hollenback to J. W. Hollenback, and from the latter to the trustee, although bearing different dates, were delivered cotemporaneously in December, 1873, and that, for a considerable period prior to that time, the deed from J. W. Hollenback was in the possession of J. M. Hollen-

back—not pursuant to a formal delivery, as has been suggested, but for examination—and for a portion of the time was in the hands of his counsel. Hence, the delivery and acceptance of the deeds are not to be regarded as independent acts, but as parts of the same act.

Neither is the case to be decided, and the rights of this plaintiff determined, upon principles which might apply if the deed of John M. Hollenback, executed in strict fulfilment of his covenants, stood alone, without any performance or attempted performance by J. W. Hollenback of his part of the contract. Nor are we to look at the case as if, subsequently to the delivery of the deed from J. M. Hollenback, he had undertaken, as an independent act, to release J. W. Hollenback, wholly or in part, from the performance of his covenants, upon which that deed was based as a consideration. We are to consider not only the acceptance of the deed from J. W. Hollenback, after examination by counsel, but also the cotemporaneous delivery of the deed from J. M. Hollenback. And, without attempting to follow or answer the elaborate and very learned argument of counsel upon this point further than the above suggestions are an answer, we conclude that up to this time it was within the power of the parties to vary their original agreement, without the consent of the other beneficiaries. In other words, the plaintiff's testatrix and her sister had not such an equitable estate or interest in the land as to prevent J. M. Hollenback, their father, from revoking the proposed settlement on them altogether, much less from accepting in consummation of the contract a deed by which the voluntary provisions for them would terminate with their lives. If this be so, then the facts above stated become material as bearing upon the question of a change of intention.

A hasty consideration might create the impression, that if there is any discrepancy between the agreement and the deed, it is to be accounted for, not upon the theory of a mutual mistake, but of an intentional change of purpose. It will be seen, however, upon more careful examination, that such an inference from these facts alone, as against the solemn recitals of the deeds, would be unwarranted. And inasmuch as the exceptions, unjustifiably, as we think, criticise some of the master's findings as to the purport of the deeds, it will not be out of

place to quote therefrom in this immediate connection. The deed from J. M. Hollenback recites the agreement in full, and then declares that it is made "in consideration of the performance of the covenants set forth in the above recited agreement, to be kept and performed by and on the part of the said J. W. Hollenback." The deed from J. W. Hollenback declares that it was made "in consideration of the conveyance to him by J. M. Hollenback and wife of all their right, title, and interest in and to all and singular" the lots included in the ejectment suit, "and also subject to the conditions and limitations contained in a certain article of agreement between J. W. Hollenback and J. M. Hollenback, dated May 16, 1873, and filed in the prothonotary's office of Luzerne county, in case No. 628 April Term 1872, in pursuance of which this conveyance is made," etc.

In determining what was the intention of the parties at the time the deeds were exchanged, the above quoted recitals cannot be ignored. Unexplained by other circumstances in connection with the act, they would furnish indubitable evidence that no change had taken place in the minds of the parties, and that they contemplated nothing less than to carry out their agreement according to the original intention. But, it is argued, there was a dispute between the parties as to the form of the conveyance to be made, and after examination by counsel, J. M. Hollenback and E. S. Osborne, the trustee accepted the deed, and the former delivered his own, knowing that J. W. Hollenback contended that he was only bound to convey a life estate and would convey nothing more. If these facts be established we do not see how we can enter a different judgment from that entered in the case of Osborne v. Hollenback, No. 2 April Term 1882. Under the supposed state of facts, the deed, as to the quantity of estate granted, was precisely what J. W. Hollenback intended it to be when he delivered it, and what J. M. Hollenback understood it to be when he accepted it and consummated the agreement by the cotemporaneous delivery of his own deed. For the court, under such circumstances, to write in this deed words of inheritance upon the ground that they were omitted by mistake would be to act on a presumption contrary to the facts. In effect, it would be putting into the deed what was deliberately left out by the parties.

When this question was before us in the former case we thought it to be the decisive one.   After a far more exhaustive examination of the authorities, aided, as we have been by the most thorough and intelligent research of counsel and master, we still think it to be so.   Down to the period of its consummation an executory contract is subject to modification, and when an act is done, which, without fraud or mistake, is tendered on the one side and accepted as full performance on the other, it is not competent to the party who accepted to allege that some part of the original contract remains to be performed: Seitzinger v. Weaver, 1 R. 385.   What, then, is the evidence to sustain the defendants' position?   In the eleventh paragraph of his answer J. W. Hollenback avers as follows : "I have always and at all times insisted that by the terms and intention of the agreement of May 16, 1873, nothing more than a life estate in the said two fifths was contemplated or provided for; that I refused to execute any conveyance for a larger estate; that the deed, as executed by me, and which is conceded by the said bill to create only a life estate, was submitted to the said John Matthias Hollenback, he being sui juris and the only person interested, and the said Edwin S. Osborne, trustee, and was accepted by them, after having retained the deed for many weeks, with full knowledge of my position and of my refusal to convey anything more than such life estate." General Osborne, while averring in his answer that the deed was submitted to J. M. Hollenback for examination, that some objection was made to the deed, and that counsel were consulted and the matter examined, and that afterwards it was accepted by J. M. Hollenback, does not say that the grounds of the objection were the quantity of estate to be conveyed, or that the delay in the final delivery of the deed was due to a dispute between the parties upon that question.   On the contrary, when he came to be examined he was asked this question: "State what information you ever had, if any, during the lifetime of Catherine E. Doyle, that John Welles Hollenback had communicated any refusal to John M. Hollenback, or to any one else, to convey more than a life estate under his covenant in his contract of May, 1873?"   To this question the following answer was made: "The deed was made by John Welles Hollenback to me, as I suppose, in pursuance of the contract.   I never heard

any question about the extent of the interest conveyed by the deed until about the time of the filing of the bill in equity by Judge HARDING. It was the first bill drawn by him. . . . . Up to that time I never heard, to my recollection, any question about the estate conveyed." It is not denied that the answer of J. W. Hollenback, in so far as it alleges a refusal on his part to convey an estate in fee, is responsive, and while the counsel have displayed great ingenuity in attempting to show that it is so inconsistent with other averments as not to entitle it to be considered as evidence of the facts alleged in this particular, we do not think their effort has been successful. Upon the principles enunciated in Eaton's Appeal, 66 Pa. 483, and kindred cases, it has effect not only as a denial of the mistake alleged in the bill, but also as evidence of the facts asserted in connection with the execution and delivery of the deed. But while this is so, we do not think, in view of the above quoted testimony, that the answer stands uncontradicted. On the contrary, the evidence of General Osborne is entitled to consideration not merely as negativing the averment of his knowledge of the defendant's contention, but also, in view of his relations to J. M. Hollenback, is entitled to some weight as affirmative evidence, that the conveyance of a life estate merely was not under discussion.

When we consider further, that the deed of J. M. Hollenback shows on its face that he had no intention of releasing J. W. Hollenback from the performance of any of his covenants; that the deed of J. W. Hollenback shows that the contract was not extinguished but was retained in full life as evidence of the conditions and limitations, subject to which the deed was made ; that after its execution and delivery up to the death of Catherine E. Doyle, J. W. Hollenback continued to pay over to the trustee, and without dissent permitted the latter, with his knowledge, to pay over to Catherine E. Doyle not only one sixth of two fifths of the coal rents but also of the purchase money of lots, we are unable to say that the master erred in holding that the averments of the answer were met by the equivalent of two witnesses. We agree, in view of the fact that this was an opened mine from which these coal rents were received, and of the conflicting opinions as to the nature thereof, that not much weight is to be accorded to the defendant's

treatment of the same as part of the income. This was not necessarily inconsistent with his contention that only a life estate had passed. But his recognition of her right to receive one sixth of two fifths of the purchase money of lots is a fact of much greater significance. It indicates that the stipulation in the contract for a conveyance in fee simple was not inserted inadvertently, and that, notwithstanding these technical words were omitted from the deed, her rights to the corpus of the estate, at least so far as the surface was concerned, were understood to be the same as they would have been if the deed had literally carried out the provisions of the contract. We are unable to reconcile this fact with the theory that the deed was delivered and accepted upon the distinct understanding that only a life estate was to be conveyed, and that, therefore, the beneficiaries were only entitled to the interest on the fund and not the fund itself.

We have now considered the main points which the merits of the case involve, and conclude that the master was justified in finding that the failure of the deed to convey the estate limited by the contract was due to a mutual mistake and not to a change of intention. There being evidence sufficient in quantity to justify the finding, notwithstanding the answer is responsive, it became a question of fact, and the master's conclusion is, therefore, entitled to the weight usually accorded to such findings. Lack of time has prevented us from discussing the other questions. We have fully considered them, however, and think they are adequately treated and properly disposed of by the master, with perhaps one exception. We have some question as to the plaintiff's right to a conveyance from the trustee, and shall be pleased to hear further from the counsel when the formal decree is submitted.

The court then signed a decree in accordance with the foregoing opinion, and referred the cause back to the master to take and state an account of the coal rentals and purchase money of surface lots sold, from February 14, 1881, etc. The report of the master stating the account having been filed and disposed of by a final decree, the defendants took this appeal, assigning as error the overruling of the exceptions to the master's first report, and the decree of April 2, 1887.

*Mr. J. V. Darling* (with him *Mr. Henry W. Palmer*), for the appellants:

1. It is undoubtedly true that in executory contracts for the conveyance of lands, no words of inheritance are necessary where the intent to pass a fee is clear: Sugden on Vendors, 16 n.; Defraunce v. Brooks, 8 W. & S. 67; McFarson's App., 11 Pa. 503; Williams on Real Property, 160. But in arriving at the intention to pass or not to pass a fee, the rules which apply to an executory trust, or a will, or a marriage settlement, cannot be used. The reason is obvious. This is an executory contract contemplating and requiring something to be done, not by the trustee, as in an executory trust, but by the parties themselves. And in a will, the fee passes as of course out of the devisor and must be taken to go somewhere. In a marriage settlement a particular intention is assumed from the outset, and the rules of construction are confessedly different. The rule as to executory agreements carrying the fee by implication, requires that the intent to do so shall be manifest: Ivory v. Burns, 56 Pa. 300; as when the entire estate passes out of the grantor by apt words: Freyvogle v. Hughes, 56 Pa. 228; Perry on Trusts, ed. 1872, § 357. But in this agreement the first manifest intention is that the whole fee shall be in John W. Hollenback.

2. But if a fee can be inferred from the character of the agreement of May 16, 1873, or from any language it contains, that fee went to the person from whom the consideration moved, John M. Hollenback, and passed from him under the judicial sale of 1882 to John W. Hollenback. John M. Hollenback's children acquired no rights under the agreement. A father who contracts for land to be conveyed to his child, the child, not being a party, cannot enforce the contract either at law or in equity: Blymire v. Boistle, 6 W. 182; Moroney's. App., 24 Pa. 376; O'Hara v. Baum, 88 Pa. 114. And it is now settled that an executory contract founded on a meritorious consideration only, will not be executed against the settlor himself: Perry on Trusts, §§ 107–11. It follows, that as there was no estate vested in the children under said agreement, the fee must have vested in the father; the deed of August 30, 1873, gave the children no larger estate, and the sale of the

father's title and estate in 1882, passed the fee to the vendee, and the bill of the plaintiff should have been dismissed.

3. The agreement of May 16, 1873, was merged in the deed of August 30, 1873, which must be taken to express the full intention of the parties; and, unless it is set aside on the ground of fraud, accident or mistake, it must prevail. Equity does not entertain a bill to clear the ground for an ejectment: Meck's App., 97 Pa. 313; nor to obtain a construction of a particular paper: North Penn. Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507; Grubb's App., 90 Pa. 228; Long's App., 92 Pa. 171; Messimer's App., 92 Pa. 168; Barclay's App., 93 Pa. 50. The terms of the executory agreement are to be controlled and regulated by the terms of the deed of consummation, and no inconsistencies between the agreement and the deed can affect the construction of the latter: 2 Sugden on Vendors, 8th Am. ed., 549; Seitzinger v. Weaver, 1 R. 384; Jones v. Wood, 16 Pa. 38; Woolam v. Hearn, 2 L. C. in Eq. 982, notes. And in this case, there is neither averment nor proof of fraud, or accident, or mistake, in the procurement or acceptance of the deed of consummation. The "fraud" set up in section 19 of the bill, is a legal fraud in claiming that the deed means what it says, not a fraud in the procurement or acceptance of it. Moreover, the separate answer of John W. Hollenback is wholly uncontradicted, either by witnesses or circumstances; on the other hand, it is corroborated by the answer and the testimony of the co-defendant, Edwin S. Osborne.

*Mr. Garrick M. Harding* and *Mr. Henry M. Hoyt* (with them *Mr. L. H. Bennett* and *Mr. John McGahren*), for the appellee:

1. The settlement of an existing controversy being a good consideration for a contract or deed, it will estop the party entering into such contract or giving such deed from afterwards asserting his defence in such controversy in avoidance of the deed or contract: Chamberlain v. McClurg, 8 W. & S. 31; McCoy v. Hutchinson, 8 W. & S. 66; Rice v. Bixler, 1 W. & S. 445; Fellows's App., 93 Pa. 470; Burkholder's App., 105 Pa. 31. Hence, the covenant of J. W. Hollenback being based on a valuable consideration, the law will not narrow the construction of such contract in his favor, so as to constitute a

reservation of an estate in himself, but will construe it most strongly against him: Beeson v. Patterson, 36 Pa. 24; White v. Smith, 33 Pa. 186; Klaer v. Ridgway, 86 Pa. 529; 1 Perry on Trusts, 174; Kerlin v. Campbell, 15 Pa. 500.

2. The rule which requires an express limitation to heirs, in a fee simple conveyance of a legal estate, is not to be applied to an executory contract which is a conveyance only in equity: Defraunce v. Brooks, 8 W. & S. 68; McFarson's App., 11 Pa. 511; 4 Kent's Com. 6, 7; Union Canal Co. v. Young, 1 Wh. 425; Ogden v. Brown, 33 Pa. 247; Fisher v. Fields, 10 Johns. 496. Again: this was not only an executory contract, but it created an executory trust, a trust to be perfected by the subsequent deeds of the parties; and for that reason the construction is to accord with the actual intent of the parties, irrespective of technical rules of property: 1 Perry on Trusts, 440–2, 437; Ivory v. Burns, 56 Pa. 304; Freyvogle v. Hughes, 56 Pa. 228.

3. When the meaning of an agreement is doubtful, its terms are to be considered in the light thrown on them by proved or admitted facts. The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation: Lacy v. Green, 84 Pa. 514; Cox v. Freedley, 33 Pa. 124; Barnhart v. Riddle, 29 Pa. 96; Morris's App., 88 Pa. 382; Bertsch v. Leh. C. & N. Co., 4 R. 130; Aldridge v. Eshleman, 46 Pa. 420; Gould v. Lee, 55 Pa. 99. Moreover, the acts of the parties in interest are to be taken into consideration by the court, as a guide to their understanding and intentions in giving a construction to the contract: Leh. C. & N. Co. v. Harlan, 27 Pa. 429; Pratt v. Campbell, 24 Pa. 184; Colder v. Weaver, 7 W. 466; Bidwell v. Pittsburgh, 85 Pa. 418; 2 Whart. on Ev. § 481.

4. The master and the court below, on the indubitable proofs before them, found that the father had never retracted nor assumed to retract the fee from his daughters, and the case was put upon the legal right of the plaintiff as the devisee of Catherine to enforce against J. W. Hollenback his covenant which he had not performed, though he had long ago received and enjoyed the full consideration thereof. The authorities sustaining the

position are full and ample. A vendor may direct how purchase money shall be paid, and if the vendee agree to pay it according to such directions, he cannot set up as a defence that his vendor was under no duty to so apply it : Merriman v. Moore, 90 Pa. 78 ; Burkholder's App., 105 Pa. 31 ; King v. Whitely, 10 Paige 465 ; Sprague v. Woods, 4 W. & S. 192 ; Ayers's App., 28 Pa. 179 ; Fellows's App., 93 Pa. 470 ; 4 Kent's Com. 307 ; Jamison v. Dimock, 95 Pa. 52 ; Kerr v. Day, 14 Pa. 112 ; Napier v. Darlington, 70 Pa. 64.

5. It is asserted, first, that there is no averment in the bill of mutual mistake, and, second, no proofs thereof. If this were true, the argument would be convincing ; but mutual mistake was averred in the bill, denied in the answer, and found to have existed on the proofs by both the master and the court. The master's report says : " It is manifest that the contract in this case was not intended to be varied or changed by the deed, and, as the latter did not convey the estate limited by the deed, the difference, it is reasonable to say, must have arisen from a mutual mistake in drawing the deed, and the plaintiff is entitled to reformation on that ground." The forty-five exceptions to the report were all overruled, and by the failure of the appellant to assign error in the overruling of any of them, except in the aggregate, they are not before this court : Landis v. Evans, 113 Pa. 332.

6. The credit due to an answer in chancery is no greater than that which is due to the deposition of a witness ; and, therefore, if that which is in favor of respondent be unreasonable in itself, or be disproved by other witnesses, or be inconsistent with other facts in the cause, it may be rejected, although there be not two witnesses contradicting the respondent : Brown v. Brown, 10 Yerg. 184 ; Long v. White, 5 J. J. Marsh 238 ; Dunham v. Gates, 1 Hoff. Ch. 188 ; Conyngham v. Freeborn, 3 Paige 564 ; Gould v. Williamson, 21 Me. 276 ; Spencer's App., 80 Pa. 317 ; Pierson v. Catlin, 3 Vt. 272 ; Manry v. Lewis, 10 Yerg. 115 ; Sayre v. Fredericks, 1 C. E. Green 205 ; 1 Daniel Ch., 5th ed., n. 7, 846*.

7. A covenant of warranty against the grantor and his heirs forever, in favor of the trustee and his successors, there being no limitation of a fee in the deed, binds the grantor and his heirs and operates by way of estoppel to convey a fee : Terrett

v. Taylor, 9 Cranch 53 ; Showman v. Miller, 6 Md. 480 ; Shaw v. Galbraith, 7 Pa. 111.

8. The plaintiff in a bill is not to be bound by the statements of fact contained therein, as admissions. The bill is not evidence of the truth of the facts stated in it, as against the party in whose name it is filed, even though his privity be shown ; but it is only admissible to prove that a suit was instituted and the subject matter of it : Boileau v. Rutlin, 2 Exch. 664 ; Taylor v. Cole, 3 T. R. 292 ; Wharton on Ev. § 1119 ; Owens v. Dawson, 1 W. 149 ; Truby v. Seybert, 12 Pa. 104 ; Darlington v. Gray, 5 Wh. 502 ; Hart's App., 8 Pa. 37 ; Werkheiser v. Werkheiser, 3 R. 326 ; Beatty v. Raudd, 5 Allen 441 ; Melvin v. Whiting, 13 Pick. 184 ; Vanneman v. L. & B. Ass'n, 5 Cent. R. 653.

9. Where a demurrer to a bill is sustained, it is simply a decision that the plaintiff has not set out such a case as entitles him to relief, and not a decision on the merits, and hence it cannot be put in evidence in a subsequent proceeding upon the same cause of action, in bar of the plaintiff's relief : Wharton on Evidence, 783 ; Detrick v. Sharrar, 95 Pa. 521 ; Bigelow on Estoppel, 121 ; Carmony v. Hoober, 5 Pa. 307 ; Hughes v. Blake, 1 Mas. 519 ; Wilbur v. Gilmore, 21 Pick. 253.

OPINION, MR. JUSTICE PAXSON :.

This case can be briefly disposed of, notwithstanding the voluminous character of the record. It is sufficient to state our conclusions, without an extended discussion.

The main object of the bill was to reform the deed from John Welles Hollenback to Edwin S. Osborne, trustee, dated August 30, 1873. With the failure to sustain this branch of the case the other prayers for relief necessarily fall.

It is a familiar rule in equity that a deed can only be reformed for fraud, accident, or mistake. There is not, within the four corners of this bill, an averment that there was either fraud, accident, or mistake in the making of this deed, nor anything approaching it. Upon this point the master says : " It is not necessary that fraud or mistake should be alleged in totidem verbis ; the charge may be substantially made by stating the facts from which the fraud or mistake would be necessarily implied : " citing Grove, Trustee, v. Reutch, 26 Md.

367, and Camden R. R. v. Stewart, 3 C. E. Greene, 346. If we concede the correctness of this position it does not help the case. There are no facts stated from which the fraud or mistake can be necessarily implied. They are at best weak and inconclusive, and it cannot be truly said that the facts stated in the bill necessarily imply that John Welles Hollenback intended to convey a fee and his omission to do so was the result of a mutual mistake. This defect in the bill was taken advantage of by demurrer, which the court below overruled. We are of opinion that this was error, and that the defendants below were entitled to judgment upon the demurrer.

If, however, we treat the bill as amended, and the necessary averments added, the plaintiff would be in no better position, for the reason that the case fails utterly upon the proofs. The agreement of May 16, 1873, was entered into in settlement of a pending action of ejectment in which John Matthias Hollenback was plaintiff and John Welles Hollenback defendant. This agreement was executory, and when the parties came to consummate it, they had the right to make any modification of it they saw proper. At that time it concerned no one but the contracting parties, and was absolutely within their control. The deed from John Welles Hollenback to Osborne, trustee, was made and delivered in pursuance of the agreement of May 16, 1873, and in compliance therewith. It was accepted by the grantees, and we must presume, in the absence of clear proof to the contrary that the agreement was merged in the deed. This transaction was not done hastily, nor in a corner. On the contrary, the deed was submitted to learned counsel, and was in the hands of John Matthias Hollenback for weeks for examination prior to its execution and delivery. It passed through the hands of such eminent lawyers as John W. Maynard and George W. Woodward, of counsel for the respective parties. There was, therefore, every opportunity for scrutiny, and literally no room for a mistake. Under such circumstances, after the death of one of the parties had sealed the lips of the other, and the death likewise of each of the distinguished counsel named, it would require evidence of the clearest and most reliable character to move a chancellor to reform the deed. We have looked through the evidence in vain for anything upon which we could sustain this decree. The defend-

ant, John Welles Hollenback, answers the bill most pointedly that there was no mistake; that he always claimed that the agreement of May, 1873, was intended to pass a life estate only; and that he refused to convey more than such life estate. In order that there may be no mistake upon this point I quote the following extract from his answer: "When the conveyance in execution on my part of that agreement came to be prepared, it was drawn so as to convey such life estate only. Insisting that this was the intention as well as the legal construction of the said agreement of May 16, 1873, and refusing to convey an estate in fee simple, I executed and delivered the deed mentioned in said section, on the 30th day of August, 1873, to the said John Matthias Hollenback, who retained the same for a long period of time (and, as I am advised, submitted it to his counsel for their opinion), and with full knowledge of the legal effect of the said deed, accepted the said deed, and executed and delivered to me his deed of release, dated and acknowledged October 24, 1873, and subsequently, to wit, on the 17th of December, 1873, caused all the said instruments to be recorded."

Under the well-settled rule in equity, this averment of the answer must stand until overcome by the oaths of two witnesses, or the oath of one witness and circumstances which are the equivalent of the oath of another witness. The learned master and the court below were of opinion that there was sufficient evidence to comply with the rule in equity and overcome the answer. Upon this point we cannot agree with them. Without going into prolix details, it is sufficient to say that we do not regard the testimony of Mr. Osborne as essentially contradicting the answer, while the circumstances relied upon for that purpose are weak and inconclusive, and do not, in our judgment, warrant the conclusions drawn from them by the master and the court below. In addition we have the fact upon this record, that in 1882, and prior to the filing of the present bill, a bill was filed against the defendant, John Welles Hollenback, to which John Matthias Hollenback and the present plaintiff were parties plaintiff, in which it was distinctly asserted and averred, not that there was a mutual mistake as to the amount of estate conveyed by this deed, but that John Welles Hollenback had always refused to convey an estate in fee

to the trustee, and had claimed by the agreement that he was only bound to convey life estates. This bill was demurred to, and the demurrer sustained, with leave to amend the bill. It was never amended, but subsequently dismissed upon the application of the plaintiff Doyle, who is also the plaintiff in this bill, the court refusing to add the words, " without prejudice " to the order of dismissal. The defendant contends that the dismissal of that bill is a bar to this proceeding, but we are not disposed to regard it as an estoppel. It is, however, important as showing that neither the plaintiff nor John Matthias Hollenback, the other party to this agreement of 1873, asserted or claimed in 1882, that there was a mistake in the deed. On the contrary the bill asserted just what John Welles Hollenback sets up in his answer, viz.: That he had always refused to convey a fee, and that he did not consider himself bound to do so under the agreement. Thus we have both parties disclaiming any mistake, and under such circumstances it is idle for this plaintiff, a stranger to that transaction, to attempt to do so.

      The decree is reversed, and the bill dismissed at the costs of the appellee.